UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re:<br><br>    CHASE MICHAEL BORUCH,<br><br>        Debtor. | Case Number: 11-16005-7 |

---

| | |
|---|---|
| CHASE MICHAEL BORUCH,<br><br>        Plaintiff,<br><br>   v.<br><br>THE ESTATE OF SALLY PERGOLSKI,<br>JAMIE PERGOLSKI, JAMIE PERGOLSKI as<br>Special Administrator of the ESTATE<br>OF SALLY PERGOLSKI, and JAMIE<br>PERGOLSKI as Personal Representative<br>of the ESTATE OF SALLY PERGOLSKI,<br><br>        Defendants. | Adversary Number: 12-245 |

---

**MEMORANDUM DECISION, FINDINGS OF FACT,
AND CONCLUSIONS OF LAW**

**Procedural History**

The Debtor, Chase Boruch, filed a voluntary Chapter 7 petition on September 29, 2011, and received a discharge on May 23, 2012. He initiated an adversary proceeding on December 26, 2012, against the estate of his mother, Sally Pergolski ("Estate of Sally Pergolski"), and his sister, Jamie Pergolski, individually and as Special Administrator of the Estate of Sally Pergolski (collectively, the "Defendants"). The complaint seeks the turnover of

property—$800,000 in life insurance proceeds—to the bankruptcy estate, the removal of probate proceedings to the bankruptcy court, a declaratory judgment finding that the bankruptcy estate has an interest in the Estate of Sally Pergolski, and an injunction against the transfer of property from the Estate of Sally Pergolski pending the Debtor's appeal of his criminal conviction for the murder of his mother. On January 11, 2013, the Debtor filed an amended complaint adding Jamie Pergolski in her alleged capacity as Personal Representative of the Estate of Sally Pergolski.[1]

After the amended complaint was filed, the Debtor filed motions for default judgment, and the Defendants filed a motion to dismiss for lack of service. On February 15, the Court issued an Order denying all of those motions. The Debtor was granted additional time to serve the Defendants, and the Defendants were granted leave to renew their motion to dismiss after service was perfected.[2] In the main bankruptcy case, the Trustee has filed a motion to abandon the estate's interest in any proceeds of life insurance on the life of the Debtor's mother.

---

[1] Ms. Pergolski denies that a personal representative has been appointed and that she is merely the estate's special administrator.

[2] In the motion to dismiss, the Defendants voluntarily waived service of the summons.

On March 15, 2013, the Defendants filed a new motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Defendants then filed a motion for abstention in the event the Court denies the motion to dismiss.[3]

## Statement of Facts

On November 16, 2011, the Debtor was convicted in Lincoln County Circuit Court of 1st Degree Intentional Homicide for the death of his mother, Sally Pergolski. On January 24, 2012, he was sentenced to life imprisonment without the possibility of extended supervision. At the time of Ms. Pergolski's death, the Debtor was a named beneficiary of two life insurance policies issued on her life. One of the life insurance policies, issued by Fidelity, included $300,000 in proceeds that were paid to Jamie Pergolski as Special Administrator of the Estate of Sally Pergolski on July 25, 2012.

The other policy, issued by American General Life Insurance Company, included $500,000 in proceeds ("American General Proceeds"). The American General Proceeds were the subject of an interpleader action filed by American General in the United States District Court for the Western District of Wisconsin on May 3, 2012. On November 29, 2012, the District Court granted American General's request to pay the American General Proceeds into the District Court, and ordered the District Court clerk to transfer the proceeds to the probate clerk of Marathon County.

---

[3] Given the Court's decision to grant the motion to dismiss, it is not necessary to reach the Defendants' motion to abstain.

In the probate proceeding, the Debtor sought to challenge Jamie Pergolski's appointment as Special Administrator and to uphold the Will of Sally Pergolski against Jamie's objection. The Probate Court concluded that although the Debtor was once an interested person for purposes of the probate proceeding because he was an heir of Sally Pergolski, his conviction for murder revoked his status as an interested person and his right to proceed in probate. *See* Marathon Cnty. Cir. Ct. Hr'g Tr., Exhibit O to Defendants' Motion to Dismiss at pp. 4-5. Specifically, the Probate Court ruled that the Debtor "lacks standing in the administration of the probate of the estate as his status as an interested person has been revoked under Wis. Stat. § 854.14(c). Chase Boruch does not have standing to participate in any further hearings or matters in this case, including but not limited to Jamie Pergolski's challenge to the Last Will and Testament and therefore any pleadings and or responses filed, or hereinafter filed, shall not be considered." Order Denying Chase Boruch's Motions, Exhibit Q to Defendants' Motion to Dismiss at p. 2.

After the Probate Court issued its ruling, the Debtor appealed its interpretation of Wis. Stat. § 854.14(c) to the Wisconsin Court of Appeals, which summarily affirmed the Probate Court. Specifically, the Court of Appeals held that "[t]he trial court correctly concluded that the appellant lacks standing to pursue any of his claims in the circuit court by virtue of his conviction for the murder of Sally Mae Pergolski . . . . Because a person convicted of murdering the decedent cannot inherit regardless of the validity of the will, he

4

has no stake in the outcome." Opinion and Order of Wisconsin Court of Appeals, Exhibit R to Defendants' Motion to Dismiss.

On January 22, 2014, the Wisconsin Court of Appeals issued a decision affirming the Debtor's homicide conviction.

## Discussion

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 ("Bankruptcy Code" or "Code") and "original but not exclusive jurisdiction" of all civil proceedings that arise under the Bankruptcy Code, or that arise in or are related to cases under the Code. 28 U.S.C. §§ 1134(a)-(b) (2012). The district courts may, however, refer such cases to the bankruptcy judges for their district. 28 U.S.C. § 157(a) (2012). In the Western District of Wisconsin, the district court has made such a reference. Western District of Wisconsin Administrative Order 161 (July 12, 1984).

Pursuant to the reference, this Court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1) (2012). The present matter is essentially a dispute over whether property should be turned over to the estate. As such, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court has both the jurisdiction and the constitutional authority to enter final judgment on the matter.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d. 929 (2007).  Further, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finally, to survive a Rule 12(b)(6) motion, the factual allegations set forth in the complaint, taken as true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In the Seventh Circuit, the standard of review under Rule 12(b)(6) has been explained as follows: "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The crux of the controversy before the Court is whether the Debtor's bankruptcy estate has an interest in the $800,000 of life insurance proceeds that were disbursed following the death of Sally Pergolski. Section 541(a) of the Bankruptcy Code provides:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1). Accordingly, for the bankruptcy estate to have an interest in the life insurance proceeds, the Debtor must have held a legal or equitable interest in the life insurance proceeds as of the commencement of the case. Whether the Debtor had an interest in the proceeds turns on the application of Wis. Stat. § 854.14, Wisconsin's "slayer's statute."

The relevant provisions of Wis. Stat. § 854.14 are as follows:

> (2) **Revocation of benefits**. Except as provided in sub. (6), the unlawful and intentional killing of the decedent does all of the following:
>
> > (a) Revokes a provision in a governing instrument that, by reason of the decedent's death, does any of the following:
> >
> > > 1. Transfers or appoints property to the killer.
> >
> > . . .
> >
> > (c) Revokes every statutory right or benefit to which the killer may have been entitled by reason of the decedent's death.
>
> (3) **Effect of revocation**. Except as provided in sub. (6), provisions of a governing instrument that are revoked by this section are given effect as if the killer disclaimed all revoked provisions or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the killer predeceased the decedent. Except as provided in sub. (6), the killer's share of the

> decedent's intestate estate, if any, passes as if the killer had disclaimed his or her intestate share under s. 854.13.
>
> . . .
>
> (5) **Unlawful and intentional killing; how determined**.
>
> (a) A final judgment establishing criminal accountability for the unlawful and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section.

Wis. Stat. § 854.14. As the text of the statute makes plain, the moment of the killing is the temporal event that triggers the statute, not the date of the killer's conviction. A final judgment of conviction for homicide conclusively proves that the convicted person was a killer under the statute. As such, if the slayer's statute applies to the Debtor, his bankruptcy estate would have no interest in the proceeds because the death of Sally Pergolski preceded the filing of his bankruptcy petition.

The Defendants argue that as a result of his conviction for homicide, the Debtor is barred as a matter of law from any interest in the insurance proceeds by operation of Wis. Stat. § 854.14. The Debtor argues that in spite of his conviction, the slayer statute does not sever his interest in the proceeds until all of his rights of appeal have been exhausted. Neither side cites any Wisconsin cases supporting their position and this Court has been unable to identify any that directly address the issue. As such, the question before the Court, whether a judgment of conviction is sufficient to trigger Wis. Stat.

§ 854.14, or whether the alleged slayer is entitled to exhaust his rights of appeal before the statute deprives him of an interest in the decedent's estate, appears to be a matter of first impression in Wisconsin.[4]

The right to appeal a criminal conviction is guaranteed in Wisconsin by statute and as a matter of state constitutional law. *See State v. Perry*, 136 Wis. 2d 92, 98, 401 N.W.2d 748, 751 (Wis. 1987) (citing Wis. Const. art. I, sec. 21; art. VII, sec. 5; and Wis. Stat. § 808.02). This constitutional guarantee extends to direct appeals of conviction, but not to collateral attacks. *See State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 648, 579 N.W.2d 698, 713 (Wis. 1998).

---

[4] There is a single case that touches on the question of whether a convicted slayer is entitled to an appeal, but it does so only hypothetically and in dicta. In *State v. McDonald*, decided before Wisconsin adopted the modern version of the slayer's statute, the Wisconsin Supreme Court addressed whether a defendant's right to appeal survived his death. 144 Wis. 2d 531, 537, 424 N.W.2d 411, 413-14 (Wis. 1988). In that decision, the Wisconsin Supreme Court mentioned that

> [B]ecause collateral proceedings may be affected by criminal proceedings in which it is alleged that an individual took the life of another, it is in the interest of society to have a complete review of the merits of the criminal proceedings. For example, under [Wis. Stat.] sec. 852.01(2m)(b), Stats., a final judgment of conviction of felonious and intentional killing is conclusive evidence that the defendant has feloniously and intentionally killed the decedent, and thus the defendant may not . . . inherit under the victim's will . . . [or, *inter alia*] receive a benefit, as a beneficiary, from a life insurance policy on the life of the victim . . . . Because of these potential collateral consequences, it serves the interest of justice to continue the appeal. By continuing the appeal, the necessity of initiating separate civil proceedings will be eliminated if the judgment of conviction is affirmed. If the judgment of conviction is reversed, the collateral rights may be resolved in a civil proceeding.

*Id.* at 537-38; 424 N.W.2d 414. Although this commentary seems to imply that a slayer may be entitled to exhaust his appeal rights before the slayer's statute is triggered, it is far from conclusive. The fact that the commentary appears in dicta, as a hypothetical, and concerns a version of the statute that is no longer in effect, undermines its persuasiveness in the present analysis.

Section 808.03(1), Wis. Stat., sets forth the conditions of appeal as a matter of right in criminal cases. *See State v. Jenich*, 94 Wis. 2d 74, 78, 288 N.W.2d 114, 116 (Wis. 1980). It states:

> **808.03. Appeals to the court of appeals.**
>
> **(1)    Appeals as of right.** A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding, and that is one of the following:
>
> > (a)    Entered in accordance with s. 806.06(1)(b) or 807.11(2).
> >
> > (b)    Recorded in docket entries in ch. 799 cases.
> >
> > (c)    Recorded in docket entries in traffic regulation cases prosecuted in circuit court if a person convicted of a violation may be ordered to pay a forfeiture.
> >
> > (d)    Recorded in docket entries in municipal ordinance violation cases prosecuted in circuit court.

Thus, once the Court of Appeals affirms a criminal conviction, the appellant has exhausted the appeal of which he is guaranteed; there is no guarantee of further review by the Wisconsin Supreme Court. *See* Wis. Stat. § 808.10 ("A decision of the court of appeals is reviewable by the supreme court only upon a petition for review granted by the supreme court.").

As noted, while this Court's decision was pending, the Court of Appeals ruled on the Debtor's appeal of his judgment of conviction. *See State v. Boruch,*

10

Appeal No. 2013AP925-CR (Wis. Ct. App. Jan. 22, 2014). In a unanimous decision, the three-judge panel affirmed the Debtor's conviction. As a result of the affirmance, both the Debtor's statutory and state constitutional rights of appeal have now been exhausted. As such, the legal question posed in the adversary proceeding, whether the application of Wisconsin's slayer's statute is effective upon conviction or whether it awaits the exhaustion of the appeals process, appears to have been mooted. Although there may have been an unresolved question of law when the Defendants filed their motion to dismiss, the question has been avoided by the fact of the affirmance. Because the Debtor has now exhausted the rights of appeal to which he was entitled, Wis. Stat. § 854.14 operates to sever his interest in the life insurance proceeds.

In the interest of completeness, however, it is worth noting that even if the Court of Appeals' recent affirmance had not exhausted the Debtor's rights of appeal as a matter of law, the Court believes the Debtor's interest in the insurance proceeds was severed in any case upon entry of the judgment of conviction.[5] The plain text of the statute, supported by nearly a century of Wisconsin case law, indicates that, with only one evident exception, the

---

[5] While Wis. Stat. § 808.03 addresses appeals of right to the Court of Appeals, it is possible the Debtor/Plaintiff might seek a further, discretionary, appeal.  He might also try to assert that additional appeals of his conviction are, somehow, appeals of right.  For that reason, it is in the interest of judicial economy to address this decision to the circumstance where the Court of Appeals' decision arguably may not constitute a "final judgment."

Debtor's conviction itself was sufficient to trigger application of the slayer's rule.

The focus of the analysis is on the "final judgment establishing criminal accountability for the unlawful and intentional killing of the decedent" under Wis. Stat. § 854.14 that is necessary to trigger the statute. In the context of a murder prosecution, the judgment of conviction entered against the Debtor by the Circuit Court of Lincoln County is a "final judgment." Wis. Stat. § 808.03(a). As such, the remaining question is simply whether the Debtor's judgment of conviction is also considered a "final judgment" for purposes of Wis. Stat § 854.14 upon entry, or whether the judgment of conviction is not a final judgment until the conclusion of an appeal. The construction of the statute and relevant case law from this and other jurisdictions interpreting similar statutes in similar contexts indicate that the answer is the former.

The slayer rule embodies the common law maxim *nullus commodum capere potest de injuria sua propria*: no one can attain advantage by his own wrong. *See, e.g., In re Estate of Safran*, 102 Wis. 2d 79, 83, 306 N.W.2d 27, 29 (Wis. 1981). The rule's purpose is to prevent the enrichment of those who kill others, regardless of motive, on the theory that to permit any benefit to accrue to the killer as a result of a killing would be manifestly unjust. Restatement (Third) of Prop.: Wills and Other Donative Transfers § 8.4 cmt. b (2013). A version of the slayer rule is in effect in every state, either by statute or judicial

decision. Anne-Marie Rhodes, *Consequences of Heirs' Misconduct: Moving from Rules to Discretion*, 33 Ohio N.U. L. Rev. 975, 979 (2007).

A summary review suggests that there are essentially two types of slayer's rules in effect: those that follow the pre-1990 Uniform Probate Code and those that follow the current Uniform Probate Code. The present version of the slayer's statute in effect in Wisconsin was implemented in 1999; however, in that it contains no language concerning a right to an appeal, it resembles the pre-1990 version Uniform Probate Code. By comparison, the current formulation of the Uniform Probate Code—which was not adopted in the 1999 revisions to the Wisconsin Probate Code—states that *"After all right to appeal has been exhausted,* a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section." Unif. Probate Code § 2-803(g) (as amended in 1993 and 1997) (emphasis added). In this regard, as has been noted elsewhere in another context,

> [W]hen the legislature intends to communicate the meaning the majority now ascribes to "conviction," the legislature has used specific language to convey that meaning. As an example, [Wis. Stat.] § 29.995 provides penalties for the violation of our fish and game laws. Persons convicted several times of these violations are subject to increased penalties. But to distinguish between a conviction entered by a trial court and one that is affirmed on appeal, the legislature refers to convictions which "remain of record and unreversed." And this is not an anomaly. The concept of convictions which remain of record and unreversed is used in [Wis.

>Stat.] §§ 102.88(2), 103.965(2), 103.97(1)(b), 939.62(2m)(b) and 973.0135(1)(a)2 . . . .

*Monroe Cnty v. Jennifer V. (In re Kody D.V.)*, 200 Wis. 2d 678, 695, 548 N.W.2d 837, 845 (Wis. Ct. App. 1996) (Dykman, J., dissenting). As such, the Court is inclined to believe that when the legislature revised the Wisconsin Probate Code in 1999, had it intended to incorporate the provision of the current Uniform Probate Code featuring the language concerning the exhaustion of appeals, it would have.

Moreover, many states whose slayer's rules are formulated similarly to Wisconsin's, including both states in the Seventh Circuit besides Wisconsin, have cases indicating that the slayer's rule is triggered upon conviction and that the killer is not entitled to an appeal of right before his interest in the decedent's property is severed. *See, e.g., Angleton v. Estate of Angleton*, 671 N.E.2d 921, 928 (Ind. Ct. App. 1996) (interpreting state slayer's statute and concluding that conviction was final judgment for purpose of statute despite pending appeal); *State Farm Life Ins. Co. v. Davidson*, 144 Ill. App. 3d 1049, 495 N.E.2d 520, 522 (Ill. App. Ct. 1986) (noting Illinois precedents that establish de facto slayer rule, and finding that killer forfeits interest in decedent's property upon conviction because finality of conviction is not stayed pending appeal). *See also Am. Gen. Life Ins. Co. v. Jones*, No. 08-0211-WS-B, 2010 WL 2926239, at *4 (S.D. Ala. July 20, 2010) (interpreting term "final judgment" in slayer's statute to refer to adjudication of guilt by the trial court, without regard to

pending appeals); *Barber v. Parrish*, 963 So.2d 892, 893 (Fla. Dist. Ct. App. 2007) (same); *United Investors Life Ins. Co. v. Severson*, 143 Idaho 628, 151 P.3d 824, 829 (Idaho 2007) (slayer's statute applied upon conviction to prevent killer from recovering decedent's property despite pending appeal); *In re Estate of Ahmed*, No. 01-BA-16, 2002 WL 1396794, at *1 (Ohio Ct. App. June 20, 2002) (slayer's statute applied upon conviction and was not stayed pending appeal); *Roberts v. Wilcox*, 805 S.W.2d 152, 152 (Ky. Ct. App. 1991) (interpreting state slayer's statute and concluding that property forfeiture provisions triggered upon conviction and did not await appeal).

This conclusion is also reinforced by a long line of Wisconsin cases interpreting the term "conviction" as it appears in the statutes. In 1908, the Wisconsin Supreme Court interpreted the term "conviction," recognizing that it is "used in common language, and sometimes in the statutes, in two different senses." *Davis v. State*, 134 Wis. 632, 638, 115 N.W. 150, 153 (Wis. 1908). Quoting the Massachusetts Supreme Court, the *Davis* court observed that "[i]n its most common use [conviction] signifies the finding of the jury that the person is guilty, but it is frequently used as implying a judgment and sentence of the court upon a verdict or confession of guilt." *Id.* (quoting *Commonwealth v. Gorham*, 99 Mass. 420, 422 (Mass. 1868)). In that context, the Court was deciding whether the phrasing of an indictment that failed to conform to the statute under which criminal charges had been brought was reversible error. Nonetheless, its finding focused the ambit of the meaning of "conviction" for

purposes of collateral proceedings—of which the present adversary proceeding could be considered an example—on the trial phase, to the exclusion of any appeal.

Seventeen years later, the Wisconsin Supreme Court buttressed its prior finding in *Davis*, explaining that "conviction" means "that the criminal proceedings must have reached the stage of a judicial determination that the person charged with the offense was guilty . . . ." *Remington v. Judd*, 186 Wis. 338, 338, 202 N.W. 679, 680 (Wis. 1925). Again, there was absolutely no mention of a right of appeal. Nearly a half-century after *Remington*, the Wisconsin Court of Appeals revisited the *Davis* decision and underscored its conclusion that the term "conviction" was susceptible of two possible definitions, both of which exclusively entail the trial phase of a criminal proceeding: "After examining several dictionaries, we are convinced that at least two possible definitions still exist; a popular meaning indicating a finding of guilt and a more technical legal meaning referring to the entire procedural process resulting in a judgment and sentence." *State v. Wimmer*, 152 Wis. 2d 654, 658, 449 N.W.2d 621, 622 (Wis. Ct. App. 1989). In *Wimmer*, the court of appeals was confronted with a challenge to the application of a Wisconsin "repeat offender" statute by a defendant who had pleaded guilty to a misdemeanor and then, mere hours later, was charged with a second misdemeanor. Because he had not yet been sentenced for the first charge, he argued that he had not been "convicted" as that term was used in the repeat

offender statute. The outcome of Wimmer's individual case is less significant for our purposes than the reiteration by the court of appeals that the statutory reference to a conviction is confined to the trial phase of the proceedings. To wit: the fact that Wimmer had not exhausted his rights of appeal had no bearing on whether or not he had been convicted as that term is used in repeat offender statutes. His guilty plea in the first case was sufficient to implicate the heightened sentencing standards for repeat offenders.

In fact, there appears to be only one area in which the term "conviction" has been interpreted to necessitate the completion of an appeal as of right. In *Jennifer V.*, the court of appeals was again faced with a question of interpretation of the term "conviction," this time in the context of a petition to terminate parental rights. 200 Wis. 2d at 682, 548 N.W.2d at 839. In that case, Monroe County sought to terminate Jennifer V.'s parental rights to her minor child, Kody, pursuant to Wis. Stat. § 48.415(5)(a) after she was convicted of recklessly causing him great bodily harm. The trial court concluded that a conviction was not a conviction within the meaning of the statute until all appellate remedies were exhausted, and the court of appeals affirmed. In its decision, the court noted that Monroe County, who argued that a conviction for purposes of Wis. Stat. § 48.415(5)(a) meant a conviction at the trial level regardless of whether an appeal is pending, and Jennifer V., who argued that conviction meant a final conviction after an appeal, both offered reasonable interpretations of the term "convicted" in the context of the statute. *Id.* at 685.

Document      Page 18 of 19

Despite the apparent plausibility of both interpretations, however, the court of appeals was persuaded that the constitutional implications of a so-called TPR proceeding, which threatens a parent's fundamental liberty interest in his or her child that is protected by the Due Process Clause of the Fourteenth Amendment, required that the appeals rights be exhausted before the conviction could be used as grounds to terminate parental rights. *Id.* at 686. Moreover, the court concluded that the purpose of TPR proceedings entails a difficult balancing of a parent's interest in his or her child against the child's best interest. *Id.* at 687. With this consideration in mind, the court found the consequences of severing parental rights prior to the exhaustion of appeals to be "troubling" because of the possibility that a conviction could be reversed. *Id.* at 688. To the court, the risk of that eventuality justified delaying the effect of a felony conviction in TPR proceedings until after an appeal had been taken. *Id.* at 688-89.

In the case pending before this Court, however, none of the factors that motivated the decision in *Jennifer V.* are present. Unlike a TPR proceeding, an action in probate—and, indeed, an adversary proceeding seeking turnover of property in bankruptcy—implicate no comparable fundamental interest. To the contrary, there appears to be no constitutional dimension to the controversy at issue. It is entirely a matter of the ownership of property rights.

On the basis of the foregoing, the Court finds that even if the Debtor had not exhausted his appellate remedies, the outcome of the present adversary

proceeding would remain the same. As such, the Debtor's complaint must be dismissed. The Wisconsin slayer's statute, Wis. Stat. § 854.14, severed his interest in the Estate of Sally Pergolski as of the date of Ms. Pergolski's death, prior to the filing of his bankruptcy petition, thereby preventing the proceeds from the Estate of Sally Pergolski, including the life insurance proceeds at issue here, from becoming property of the Debtor's bankruptcy estate. The Defendants' motion to dismiss should therefore be granted and the pending adversary proceeding should be dismissed.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: January 31, 2014

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge